## McDuffie & Armstrong *v.* Irvine.

1. A declaration in the name of E. D. Irvine, "agent for the Georgia Music House," is amendable by striking out the descriptive terms following the plaintiff's name.
2. One who as the head of a family has procured an exemption of personalty, and afterwards invested the same or a portion of the

property in business, may in his own name recover from a wrong-doer property to which the former has acquired title in his business dealings, paying for it with some of the exempted property or its proceeds.

3. The evidence warranted the finding, and the result, on review below, being satisfactory to the presiding judge who tried the case without the intervention of a jury, this court will not interfere with his discretion in refusing to grant a new trial.

June 26, 1893.

Before Judge Ross. City court of Macon. September term, 1892.

J. A. THOMAS and B. B. WHITE, for plaintiffs in error. No appearance *contra.*

SIMMONS, Justice.

1. An action for the recovery of a piano was brought by "E. D. Irvine, agent for the Georgia Music House." The words following the plaintiff's name are merely descriptive terms, and may be treated as surplusage. The action was neither more nor less than a suit by Irvine in his individual capacity. Hence, there was no error in allowing the declaration amended by striking the words, "agent for the Georgia Music House," and it makes no difference that this was done after the plaintiff had closed his evidence. If Irvine had signed his name to a promissory note and had written after it the above quoted words, there can be no doubt that he would have been personally liable on the note, and that its collection could have been enforced by a suit against him in his own name. This being so, we can see no reason why the unnecessary words should not have been stricken from the declaration.

2, 3. The evidence showed that Irvine had failed a few years before the action was brought, had taken a homestead, and thereafter had carried on business as agent for his mother who was one of the beneficiaries of the homestead, and that the piano in dispute was a part of the proceeds of the homestead property. The

chief complaint of the defendants below was that the plaintiff, in view of the above facts, had not shown title in himself to the property sued for, and that therefore the verdict in his favor was necessarily contrary to law. It further appeared that the homestead was originally taken out of property belonging to Irvine, and that he used the exempted property in conducting his business as a dealer in musical instruments, just as he had done before the homestead was taken. The term, "the Georgia Music House," was not the name of a corporation or partnership, but simply a "fancy name" selected by Irvine, and under which he carried on the business mentioned. In point of fact, all the property involved in the business was simply held by Irvine as the head of a family and by virtue of the homestead right. It may be that he was entitled to recover under the evidence showing that the business was conducted by him under the "fancy name" above specified; but even if this is not so, we see no reason why he could not, under the facts stated, recover in his own name from a mere wrong-doer. This court held in *Gresham* v. *Johnson et al.,* 70 *Ga.* 631, that the setting apart of a homestead, or the allowance of an exemption under section 2040 of the code, did not alter or change the title to property exempted, but merely set apart the property for a particular specified use, and to that extent imposed a charge or incumbrance upon the estate. This ruling was affirmed in *Rutledge et al.* v. *McFarland,* 75 *Ga.* 774. And see *Van Horn* v. *McNeill,* 79 *Ga.* 121, 123. The principle of these cases applies to homesteads taken under the constitution of 1868, or under the present constitution. Indeed, the real contention in the *Gresham* case was, that when property was exempted under section 2040 of the code, the title vested absolutely—even as against creditors—in the family of the debtor; but this court having decided otherwise, it necessarily follows that

the doctrine of that case and the *Rutledge* case is applicable alike to all homesteads allowed by the constitution or laws of this State. This conclusion is confirmed by the fact that this court, in *Willingham & Dunn* v. *Maynard et al.*, 59 *Ga.* 330, had already decided that the legal title to land set apart under the constitution of 1868 as a homestead, vested in the head of the family; and this case is cited in the *Gresham* case, *supra.* The cases of *Daniel, trustee*, v. *Bush et al.*, 80 *Ga.* 218, and *Barfield et al.* v. *Jefferson*, 84 *Ga.* 609, in no wise conflict with the decision made in the case at bar. In the former, it was held that a judgment against the head of a family in his individual capacity could not be set off against a judgment recovered by him as the head of a family, and as trustee for the beneficiaries of the homestead; and in the latter, it was ruled that where an action for land was brought by a vendee against a vendor who had previously had the land set apart to himself as a homestead, and the action was defended by the vendor with pleas of not guilty and usury in his deed, the defendant represented not only his own interest in the legal title, but also that of his family in the use, and that the judgment rendered in favor of the vendee bound the defendant's family as well as himself. In the nature of things, the head of a family must represent the interests of the beneficiaries in all actions where the title to the exempted property is involved, and it makes no difference whether he be described as the head of the family, or as trustee, or as agent, or simply designated by his own name. This we also think is in perfect harmony with the case in 59th *Georgia*, above cited, in which it was held that, in order to subject homestead property to the payment of a debt for material furnished for its improvement, the pleadings must show the grounds of the claim, how the estate is liable, and the names of the beneficiaries, as in other common law suits against trust

estates.  An action which seeks to subject exempted property to the payment of a debt, stands upon an entirely different footing from an action brought to recover such property from a mere trespasser or wrong-doer, or an action brought for the recovery of exempted property against the head of the family by another. The head of the family may bring, or may defend, such an action, and in so doing, represents the family, this being a duty necessarily resting upon him because of the peculiar relation which, under the law, he occupies to the property and the family; but one who endeavors by suit to bring homestead property to sale under judicial process, must aver and prove everything necessary to show that the exemption is not valid as against the claim he seeks to enforce.

As we understand the law, and in view of the evidence, we think the court below was right in holding that the plaintiff was entitled to recover.

*Judgment affirmed.*