# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1910.

---

### 2426. CROWLEY & COMPANY *v.* FREEMAN.

1. Where, upon the levy of a fi. fa. upon certain personal property, an affidavit of illegality was filed, which was fatally defective, and a claim was interposed by the same party, and the affidavit of illegality was dismissed by the court, it was error, upon a mere oral motion, to dismiss the claim upon the ground that the pendency of the affidavit of illegality concerning the same subject-matter and between the same parties at the time of the filing of the claim prevented the prosecution of the claim. The claim could not be abated, nor the point be raised, except by a plea in bar, in the nature of a plea in abatement. Furthermore, inasmuch as the affidavit of illegality was void upon its face, the filing of what purported to be, but in fact was not, an affidavit of illegality would not be a bar to the filing of a claim.

2. The setting apart of a homestead does not divest the head of the family of the legal title to the property. It only appropriates the property to a particular use, for the benefit of certain beneficiaries, and during a specified time. Where property which has been set apart and exempted is subjected to a levy, a claim may be interposed by the head of a family in his own name. It is not necessary that the claimant denominate himself as trustee or head of the family, if it appears from the allegations of the claimant's affidavit that the property levied upon has in fact been exempted and set apart for use as homestead property. "In the nature of things the head of a family must represent the interests of the beneficiaries in all actions where the title to the exempted property is involved, and it makes no difference whether he be described as the head of the family, or as trustee, or as agent, or simply designated by his own name."

3. There was no error in sustaining the certiorari.

DECIDED FEBRUARY 22, 1911.

Certiorari; from Richmond superior court.   Judge Hammond. January 7, 1910.

*Isaac S. Peebles Jr.,* for plaintiffs.

*A. R. Williamson, W. B. Pierce,* for defendant.

RUSSELL, J.   Crowley & Co. caused the levy of a fi. fa. upon certain chattels as the property of Julia Freeman.   She filed an affidavit of illegality, upon the ground that the note which was the foundation of the judgment from which the fi. fa. issued was a forgery, and also upon the ground that there never was any such person or partnership in existence as Crowley & Co.   Prior to the trial she filed also a claim in her individual name, in which she asserted that the personal property which had been levied upon was exempt from levy and sale, under the Civil Code (1910), § 3416, and that she claimed this exemption; alleging, further, "that it is illegal to levy on and sell property that is exempt by virtue of the homestead law."   Upon the hearing before the justice of the peace the affidavit of illegality was dismissed, upon the ground that there was no bond or pauper's affidavit filed therewith.   Counsel for the plaintiff in fi. fa. then moved to dismiss the homestead exemption claim, on the ground that there was pending a suit concerning the same subject-matter between the same parties at the time of the filing of the claim.   The court sustained this motion and dismissed the claim.   The plaintiffs in fi. fa. did not file any plea in bar, in the nature of a plea in abatement, to the claim.   The motion to dismiss upon the ground stated was merely oral.   The claimant (conceding that the ruling of the justice of the peace upon the affidavit of illegality was correct), by writ of certiorari, presented to the superior court, for review, the judgment dismissing the claim, and upon the hearing the judge of the superior court sustained the certiorari, set aside the judgment dismissing the claim to the homestead exemption, and ordered that the claim case be set for trial in the justice's court.   Crowley & Co. except to the judgment sustaining the certiorari.

1. The judgment of the superior court, setting aside the judgment of the magistrate which held that Julia Freeman in her individual name could not interpose a claim to property which she alleged to be exempt by virtue of a homestead, was correct.   It is insisted, however (and perhaps this insistence was the cause of the judgment rendered in the justice's court), that the claim should

have been dismissed because there was an affidavit of illegality pending between the same parties and in regard to the same subject-matter at the time the claim was filed, and that the former proceeding was a bar which prevented Julia Freeman from claiming the property; and it is insisted that in sustaining the certiorari the judge erred for the additional reason that it is clear from the petition for certiorari that it was the ruling upon the affidavit of illegality, and not the claim case, which was carried up for review. Treating these contentions in reverse order, we need only say that the petition for certiorari set forth what occurred upon the trial, and the errors complained of, with sufficient plainness and distinctness, and the statement therein in regard to the ruling upon the affidavit of illegality is nothing but a part of the history of the case, given for the purpose of explaining and illustrating the motion to dismiss the claim, which was sustained by the court. No exception is taken to the order dismissing the affidavit of illegality, and it would naturally be assumed that Julia Freeman conceded the correctness of that ruling, in the absence of any statement to the contrary, for the only assignment of error in the petition for certiorari is the statement that the court erred in dismissing the claim to homestead exemption. But this is not all. In the first ground giving reasons why the judgment dismissing the claim was erroneous, it is conceded that the affidavit of illegality was so defective that no defense was presented by it. It is therefore as manifest that the petition clearly presented the case sought to be reviewed as it is apparent that the judge did not misunderstand or misjudge the point involved.

As to the insistence that the trial court should have dismissed the claim upon an oral motion, for the reason that at the time that the claimant interposed her claim there was pending an affidavit of illegality by which she sought to arrest the levy of the same fi. fa. upon the same goods as to which her claim was presented, we are of the opinion that, even if the rendition of the former judgment had afforded any reason for dismissing the claim, the plaintiff in fi. fa. should have filed in writing a plea in bar in the nature of a plea in abatement; but, even if such looseness of pleading in a justice's court be permissible as to have enabled the plaintiffs in fi. fa. to attack the claim as they did by oral motion, still the judgment of the justice of the peace in dismissing the claim for the

reasons stated was erroneous. It is stated that the affidavit of illegality was dismissed upon the ground that there was no bond or affidavit accompanying it, as required by law; but whether this fact influenced the court in striking the affidavit of illegality, or not, the dismissal of the so-called affidavit of illegality was absolutely necessary, and not merely a matter of form. The claimant can not (except in some different capacity) file an affidavit of illegality.

2. Conceding, then, as counsel for the defendant in error do, that the dismissal of the affidavit of illegality was correct, we come to consider the insistence that Julia Freeman could not in her individual name assert a claim to property which she averred had been set apart and exempted as homestead. It has been several times ruled by the Supreme Court that the setting apart of a homestead does not divest the title to the property, but merely sets it apart for the use of the beneficiaries of the homestead. *Gresham* v. *Johnson*, 70 *Ga.* 632; *Willingham* v. *Maynard*, 59 *Ga.* 330; *Jolly* v. *Lofton*, 61 *Ga.* 154; *Rutledge* v. *McFarland*, 75 *Ga.* 774; *Van Horn* v. *McNeill*, 79 *Ga.* 121-123 (4 S. E. 111). Therefore, if Julia Freeman was the head of the family, the title would still be in her, and she would have the right to assert the claim as head of the family. If she is the beneficiary, and not the head of the family, she would likewise have the right to assert the homestead and protect the exempted property from sale. The title to the property set apart as a homestead is for the use and benefit of the family, and is in the nature of a trust estate; the mere legal title being in the head of the family as trustee or agent. *Willingham* v. *Maynard*, 59 *Ga.* 330. In *Tucker* v. *Edwards*, 71 *Ga.* 604, where a Mrs. Edwards, on behalf of herself and minor children, sued out a possessory warrant against Tucker & Peck to recover a horse which had been set apart as an exemption to Edwards as the head of the family, and in which case it appeared that the head of the family himself had assented to Tucker's possession, Chief Justice Jackson, in delivering the opinion of the Supreme Court, said: "The single question worth a moment's thought is whether the head of the family or the wife should have brought the possessory warrant. · It is purely technical which should bring it. The real use and possession is in the wife and children. Code [1882], §§ 2040, 2048. It is for their 'use and benefit,' as those sections

declare, and the husband's possession is for them, and is therefore their possession; and as she brings the case for herself and the minor children, doubtless because of the sort of extorted consent of the husband, and as no consent of his could legally dispossess them of the. horse, we shall rule that the warrant was properly sued out by the wife and minors, and the possession properly restored to them."

It may be said that in the *Tucker* case, supra, the proceeding was by possessory warrant, which affects only possession; whereas in claim cases there is necessarily an assertion of title, and that this distinction creates an essential difference. We need not mark the distinction or discuss the difference, because in *Gresham* v. *Johnson, 70 Ga.* 632, in which the proceeding was by claim, Justice Hall, in delivering the opinion of the court, said: "Our view of this case is that the setting apart of a homestead, or the allowance of an exemption, does not alter or change, or in any manner affect, the title to the property exempted. It simply sets it apart to a particular, specified use, and to that extent imposes a charge or incumbrance upon the estate." In another portion of the opinion he said that the effect of the previous holding of the Supreme Court in *Hall* v. *Matihews, 68 Ga.* 490, was to declare that the homestead did not divest the title of the owner, nor vest it in the beneficiaries.

The claim affidavit in the present case is not fatally defective. It appears upon its face to be a claim interposed by the head of a family for the purpose of asserting the exemption set apart to her as a quasi trustee for the beneficiaries. The statement that the property levied upon is exempt by virtue of a homestead is distinct and explicit. If it were necessary to amend so as to show in what capacity the affiant interposed the claim, the affidavit could be amended. But under the ruling in *McDuffie* v. *Irvine,* 91 *Ga.* 751 (17 S. E. 1029), no amendment is necessary, because it is expressly held that "in the nature of things the head of a family must represent the interests of the beneficiaries in all actions where the title to the exempted property is involved, and it makes no difference whether he be described as the head of the family, or as trustee, or as agent, or simply designated by his own name. An action which seeks to subject exempted property to the payment of a debt stands upon an entirely different footing from an action

brought to recover such property from a mere trespasser or wrong-doer, or an action brought for the recovery of exempted property against the head of the family by another. The head of the family may bring, or may defend, such an action, and in so doing represents the family, this being a duty necessarily resting upon him because of the peculiar relation which, under the law, he occupies to the property and the family; but one who endeavors by suit to bring homestead property to sale under judicial process must aver and prove everything necessary to show that the exemption is not valid as against the claim he seeks to enforce."

We see no reason why Julia Freeman, if she proves that the property which has been levied upon is exempt under and by virtue of a homestead or exemption, may not prevent the sale by the interposition of a claim in her own name. If she is the head of a family, she is the owner of the legal title and the trustee of the usufruct which has been set apart to the beneficiaries. If she is a beneficiary, she can by claim assert the quasi equitable right of user or interest of herself and the other beneficiaries, as it is called by Judge Hall in *Gresham* v. *Johnson,* supra. The homestead property is an entity which, except in exceptional cases, must be kept intact as long as the exemption has a single beneficiary entitled to enjoy its benefits. The constituent parts of the property exempted can not be dismembered, nor any of it sold, except by order of a judge of the superior court. And therefore we see no reason (though this point is not here involved) why a claim may not be interposed by any beneficiary of a homestead as a means of preserving the integrity of a trust estate for the benefit of all the beneficiaries.

So far as the questions involved in the present case are concerned, the decisions cited by counsel for the plaintiffs in error are not in point. The only matters decided in *Pierce* v. *De Graffen-ried,* 43 *Ga.* 392, are that a person who does not claim under the family could not by a claim assert title to or interest in the homestead property, and that a claimant cannot defeat a plaintiff in fi. fa. by showing the title in a third person not a party to the record where the defendant in fi. fa. was in possession at the time of the levy. In that case the plaintiffs in error, who claimed to be bastard children of a head of a family to whom a homestead had been set apart, attempted to assert title to the land by reason of

the fact that their putative father, who was shown to be a bachelor, had attempted to have a homestead set apart in the land which was levied upon. The language of Judge McCay very clearly intimates that, if the plaintiffs in error had any right, it might properly have been asserted by claim; but quite naturally it was ruled that they were not and could not be members of the family, and therefore had no rights that could be asserted. The court said: "Had the claimants stated that they expected to connect themselves with this record, to show that under it they had acquired title, it would be admissible. But, so far as appears, they do not claim under it. They are not the heirs of the wife and children, nor are they, so far as appears, in any way connected with them. It is a simple attempt to defeat the plaintiff's levy by showing title in an outside claimant, not in the record as a party." In *Daniel* v. *Bush,* 80 *Ga.* 218 (4 S. E. 271), which is cited by counsel for plaintiff in error, it was held that a fi. fa. against the head of a family to whom a homestead had been set apart could not be set off against a judgment on which money had been brought into court in favor of the head of the family as trustee. It is quite apparent, however, that the distinction between the *Daniel* case, supra, and the case at bar is pointed out in *McDuffie* v. *Irvine,* from which we have quoted above. In the *Daniel* case, as pointed out by Judge Simmons, the fi. fa. which Bush placed in the hands of the sheriff was against Isham Daniel as an individual, and while it may have been for guano used by Isham Daniel, there was no suit against him as head of the family, to subject the property set apart to him, as in the case of *Willingham* v. *Maynard,* 59 *Ga.* 330. The suit was against him as an individual, and not as the head of a family or trustee, and there was no judgment subjecting the homestead property to the debt made for guano.

In *McWilliams* v. *Anderson,* 68 *Ga.* 772, the Supreme Court held that the wife or the family might, without making the head of the family a party plaintiff, maintain an action of trespass against an officer for wrongful levy on homestead property in accordance with section 2027 of the Code of 1873 (Civil Code (1910), §.3399). If this section needed construing, the decision in the *McWilliams* case clearly established the proposition that either the wife or the family, or the head of the family, might separately bring an action for trespass upon the homestead, and that, if the action was brought

by any one or more of the persons named, an amendment seeking to add any one of the others would introduce a new party to the action, and also that the judge erred in sustaining the demurrer to the declaration based upon the ground that the head of the family was not a party to the suit. It is true that the code specifies the particular persons, any one of whom may sue for the trespass upon the homestead, and gives each of these named persons the right to pursue that remedy, and it is not specifically pointed out in the code that any one of these persons, as in the case of trespass, may file a claim, yet in view of the language used in the decisions which we have cited, and the peculiar relation which each of the parties interested in a homestead sustains to it (all, however, being interested in its preservation), it would seem that any one of the persons interested in the preservation of the exemption might, by claim, prevent its sale, especially in a case like the present, where, according to the averments of the claim affidavit, the claimant, if she sustained her claim, might have the right to sue for the trespass committed by the levying of the process upon the homestead property after the attention of the levying officer had been called to the exemption.

As to who are the proper parties to suits involving the protection of homestead rights, and as to the distinction between suits involving legal title in its strict sense and suits involving only the special use or right of possession, see Powell on Actions for Land, § 78.         *Judgment affirmed.*