HOLLINSHEAD *v.* WOODARD, administrator, *et al.*

1. The issue in a claim case comprehends all attacks which the claimant could make on the validity of the fi. fa. After a claimant has litigated through a claim case and the property has been found subject, and a judgment of affirmance has been rendered by the Supreme Court, a court of equity will not enjoin a sale under the levy upon any ground which the claimant might have urged in the claim case, tending to show the invalidity or discharge of the judgment.

2. A claimant who is concluded by a judgment in a claim case has no right in equity to enjoin the fi. fa. (which is against an executor de bonis testatoris) until an accounting can be had with the executor, on the ground of alleged insolvency of the estate in the executor's hands, so as to ascertain the relative priorities of the judgment lien and other demands of the creditors of the estate, with a view of lessening the amount for which the judgment may be enforced.

Argued December 3, 1906.—Decided April 9, 1907.

Petition for injunction, etc. Before Judge Felton. Houston superior court. September 24, 1906.

Hollinshead filed a petition for injunction and other equitable relief against Isaac T. Woodard, as administrator of the estate of F. W. Gano, M. L. Cooper, as the sheriff of Houston county, and W. H. Harris, as executor of the will of H. C. Harris. The petition, as amended, alleged: On March 12, 1894, H. C. Harris died, leaving a considerable estate, but being largely indebted. At the October term, 1899, of the superior court of Houston county, F. W. Gano obtained a judgment against "W. H. Harris, executor H. C. Harris," for $2,000 principal and $440.88 interest, and execution was issued thereon October 3, 1899. On October 7, 1903, an ex parte order was passed by the court, on oral motion of Gano and without any notice to W. H. Harris as executor or otherwise, purporting to amend the original judgment so as to make it a judgment de bonis testatoris; and on November 2, 1903, the execution was amended so as to correspond with the judgment as amended. The original judgment, viewed in the light of the pleadings, and of the process and the service upon which it was entered, was a personal judgment against W. H. Harris individually, and did not operate as a lien on the property of the estate he represented; and the execution as originally issued was against him in his individual capacity only. The amendment to the judgment was void, there being no pleadings which authorized it, and the amendment of the execution was likewise a nullity. On March 2, 1904, plaintiff purchased at a public sale, duly advertised and conducted by W. H. Harris as executor, for $8,100, a lot in Fort Valley, belonging to the estate, on which had been erected what was known as the Dow Law Bank Building, and immediately went into possession of the premises, and has since remained in possession and collected and enjoyed the rents and profits thereof. At the time of this purchase, plaintiff had no notice that the execution which had been

originally issued against W. H. Harris as an individual had been amended in the manner above recited; no entry of any amendment thereof was made upon the general execution docket of the county till after plaintiff bought the property, nor till March 9, 1904, when the execution was levied on the property, or some time thereafter. On the date last named, the sheriff, acting under the direction of Gano's attorney of record, made the levy, and plaintiff interposed his claim to the property, thereby putting in issue the question whether the property sold by the executor at public sale was sold free from the lien, if any, of this execution, and whether the sale divested any existing lien on the property, plaintiff having purchased the property in reliance upon advice that the sale would divest the lien of any execution. The issues raised by the plaintiff's claim were finally determined against him, and the property was held to be subject, so far as the title was involved. Pending the claim case Gano died, and his administrator, Isaac T. Woodard, was made a party in his stead. Before that case was finally determined, the plaintiff in fi. fa., acting through his attorney, H. A. Mathews, withdrew the execution and caused the sheriff to make thereon the following entry: "Due search made and no property of the estate of H. C. Harris in the hands of W. H. Harris, executor, to be found in Houston county upon which to levy the within fi. fa. This, the 6th day of March, 1905. [Signed] M. L. Cooper, sheriff." The purpose of this entry was to enable Woodard, as the administrator of Gano, to file suit against W. H. Harris individually to recover the amount of the judgment, which had been amended so as to purport to be a judgment against him as executor; and four days after the entry of nulla bona was made, the administrator filed suit in the superior court against Harris individually for the collection of the execution; which suit is still pending. This action on the part of the administrator of Gano was an express abandonment of the levy, and the lien of the execution has been lost, so far as the property levied on is concerned, because he thus made his election to dismiss the levy and abandon any lien on plaintiff's property, and to proceed directly against Harris individually. But notwithstanding this abandonment on the part of the administrator, the sheriff, acting under and by virtue of the said levy, has advertised the property for sale on the first Tuesday in March, 1906, and will, if not restrained, then sell

it at public outcry. The sale, if allowed to be made, will be absolutely void, but at the same time will operate as a cloud upon the plaintiff's title, and will lead to a multiplicity of suits and to expensive litigation.

Further: even should it be determined that the lien of the execution in favor of Gano was not lost and abandoned by his administrator, the levy made on plaintiff's property on March 9, 1904, has been superseded and dismissed, and any sale thereof by the sheriff under the advertisement will be voidable, and this fact would so prejudice the sale of the property that prospective purchasers would be deterred from bidding anything like its real value, and there would be a useless and unnecessary sacrifice, to the great wrong and injury of the plaintiff. Moreover, the levy was void, in that it was grossly excessive, the value of the property being $8,100; there is upon the lot levied on a large two-story brick building, occupied by a bank and other tenants; there were in the same block vacant lots belonging to the estate of H. C. Harris, and the same could have been levied on and sold for more than enough to satisfy the execution, without interfering with the much more valuable property of plaintiff; and the levy being, under the circumstances, void, a sale of the property would cast a cloud upon his title. The judgment and execution have been fully satisfied, for at the time the executor sold the property to plaintiff, he sold other properties belonging to the estate to William R. Brown for $15,300; and after the sale thereof, but before the levy of the execution on plaintiff's property, the plaintiff in fi. fa., Gano, sued out a process of garnishment against William R. Brown, based on the said judgment, with full knowledge that this large amount was due by him; yet, for a valuable consideration paid by the executor to Gano, he dismissed his garnishment and voluntarily released property of the cash value of $15,300 which was subject to his execution. The dismissal of the garnishment was a satisfaction of the execution, so far as plaintiff is concerned; for a sum more than sufficient to pay off the execution was thereby released, and was, with the consent of the plaintiff in fi. fa., applied to the payment of other liens against the Harris estate of inferior dignity. Should the court determine, however, that the lien of the execution survives, then it should not be allowed to have any higher rank or dignity than the debt held by Gano against the estate, the judgment having been ob-

tained since the death of H. C. Harris.  The judgment was founded on a promissory note, and there were many other debts of higher dignity and many other notes representing debts of equal dignity. The estate of H. C. Harris proved to be insolvent, and the pro rata share of said judgment would not amount to more than fifty per cent. of the principal and interest.  It will require an accounting and settlement by W. H. Harris, the executor, to determine the exact pro rata share which the judgment should have in the assets of the estate.  Real and personal property came into the hands of the executor from which he realized about $67,000, whereas the debts of the estate aggregated some $87,000; and should the executor be required to set forth a complete statement of the affairs of the estate, it would show that the judgment is not worth more than fifty per cent. of the amount for which it was rendered.  An accounting by the executor should be had, and such a distributive share as is thereby shown should be paid over to the administrator of Gano, before the plaintiff or any of the purchasers of property from the executor should be called on to pay this judgment.  The plaintiff prayed, (1) that the sale of his property be enjoined, inasmuch as the amended execution was a nullity; (2) that the court decree that any lien of the judgment and execution in favor of Gano had been abandoned, in so far as plaintiff's property was concerned, that the levy was void, and that the execution had been settled in full, relatively to him; or (3) should the court determine that the lien of the execution survived, that the executor be required to account for all property of the estate which came into his hands, and to disclose what pro rata share should be paid on the judgment in favor of Gano, and (4) that the court grant such other relief as might be meet and proper.

The defendants Woodard, as administrator, and Cooper, the sheriff, joined in a demurrer to the petition, thereby insisting that the plaintiff had his day in court when he interposed his claim to the property levied on, and that all the matters set up in his petition had been determined against him in the claim case, save his contention that the levy was excessive, which, if true, would not entitle him to the relief sought.  These defendants also demurred to the petition on the ground that it was multifarious, and because there was a misjoinder of parties and of subject-matters, W. H. Harris being made a party, although no relief was prayed against him, or at least

no relief which was in any way connected with that sought against the other defendants, and the only object of making him a party being to use him as an ally to prevent the enforcement of the fi. fa. By special demurrer the defendants challenged the several contentions of the plaintiff as to the legal effect of the entry of nulla bona, made on the execution after the levy, and the dismissal of the garnishment proceeding, and as to the excessiveness of the levy and other matters relied on by the plaintiff as showing his right to relief. The administrator and the sheriff joined also in an answer in which they denied that the levy was excessive, and averred that the plaintiff bought the property after the dismissal of the garnishment proceeding referred to in his petition; that the property was bid off at the executor's sale by J. L. Brown, under the public announcement that the sale was made on condition that all liens thereon would be satisfied before the purchaser was called on to comply with his bid; that Brown declined to comply with his bid because the lien of the Gano judgment was not satisfied, and that the plaintiff then agreed to comply with Brown's bid in view of the deposit in bank by the executor of $3,500 as a guarantee to save him harmless. These defendants set out the circumstances under which the judgment and execution had been amended, and asserted that the amendment thereof was authorized by the record; and they characterized the present suit as one brought in behalf of Harris, the executor, and charged that the plaintiff had confederated with him to delay and prevent, if possible, the collection of this judgment. In an answer filed by W. H. Harris, as executor, he admitted all of the material allegations of the plaintiff's petition and expressed a willingness to render to the court a full accounting with regard to the financial affairs of the estate, disclosing the amount of its assets and liabilities and the priority of all debts paid or outstanding. The court, after hearing evidence, refused an interlocutory injunction, and the plaintiff excepted.

*Erwin & Callaway* and *John P. Ross,* for plaintiff.

*H. A. Mathews* and *Louis L. Brown,* for defendant.

EVANS, J. (After stating the facts).

1. An execution in favor of Woodard, administrator of Gano, against Harris, as executor of the will of H. C. Harris, was levied upon an improved town lot, and Hollinshead filed his claim in the statutory form. The issue of fact therein was tried and the prop-

erty found subject, and judgment duly entered thereon. A mo-
tion for new trial was made and overruled, the claimant sued out
a writ of error to this court, and the judgment was affirmed. *Hol-
linshead* v. *Woodard, 124 Ga. 721.* The unsuccessful claimant
seeks in the present proceeding to enjoin the further enforcement
of the execution, upon the various grounds set forth in the forego-
ing statement of facts, all of which are predicated upon facts exist-
ing at the time of the trial of the claim case. The defendant in
error contends, that all of these issues were either actually made, or
should have been made, in the trial of the claim case, and that the
judgment therein concludes the claimant from raising these issues
in the present proceeding. We will therefore address our inquiry
to the soundness of this contention as presented by the demurrer.

This court on several occasions has in effect declared that a claim
case, though on the law side of the court, partakes of the nature
of an equitable proceeding. *Williams* v. *Martin, 7 Ga. 377; Ken-
nedy* v. *Redwine, 59 Ga. 330; Ford* v. *Holloway, 112 Ga. 851.* It
has sometimes been said that the issue to be tried in a claim
case is that of title. *Pierce* v. *DeGraffenried, 43 Ga. 392; Moss* v.
*Stokely, 107 Ga. 233.* But this is too narrow a statement of the
full extent of the issue involved in the adjudication of a claim case.
The object of a claim is not only to try the question as to whether
the title is in the claimant or the defendant in execution, but also
whether the property levied upon is subject to the execution as
against the title which the claimant sets up. *DeLoach* v. *Myrick,
6 Ga. 412; Black* v. *Lewis, 30 Ga. 961; Alston* v. *Wilson, 64 Ga.
482.* As was remarked by Judge Nisbet in *Colquitt* v. *Thomas, 8
Ga. 265,* in arguing the scope of the issue, "Nothing is, in truth,
put in issue by the record, in a claim case, but the liability of the
property to the plaintiff's judgment. The title of the claimant is
tried, but no issue is made on the record about that. It is a
feigned issue—feigned albeit it involves title to lands. That
the sole legal issue is the liability of the property to the judgment,
is proven by the verdict." A claimant may attack an execution for
any reason which the defendant in execution could urge against it
at the time of the trial of the claim case. *New England Mortgage
Co.* v. *Watson, 99 Ga. 735; Robinson* v. *Schly, 6 Ga. 529; Brad-
ford* v. *Water Lot Co., 58 Ga. 282.* Since the defendant may at-
tack a judgment void upon its face, the claimant may take advan-

tage of the fact that the judgment upon which the plaintiff in execution relies is a mere nullity, when this fact appears on the face of the record of the proceeding upon which such judgment was rendered. *Osborne* v. *Rice,* 107 *Ga.* 282; *Hines* v. *Kimball,* 47 *Ga.* 588; *Krutina* v. *Culpepper,* 75 *Ga.* 602; *Gazan* v. *Royce,* 78 *Ga.* 512; *Dixon* v. *Williams,* 82 *Ga.* 108; *County of Pulaski* v. *Thompson,* 83 *Ga.* 270. From an analysis of the foregoing cases it will appear that the determination of the issue involved in a claim case includes all attacks which the claimant could have made upon the validity of the process, as well as the assertion of his title.

In *Pollard* v. *King,* 63 *Ga.* 225, it was held, that after the claimant and plaintiff in fi. fa. have litigated through a regular claim case, and the property has been found subject, a court of equity will not enjoin a sale under the levy because the plaintiff's judgment against the defendant in fi. fa. was not signed by the plaintiff or his counsel. And in *Henderson* v. *Hill,* 64 *Ga.* 292, it was held that after the claimant has litigated through a claim case, and the property has been found subject, and a judgment of affirmance has been rendered by the Supreme Court, he will not be heard to question the validity and binding force of the original judgment between the creditor and the debtor on which the levy rested, by showing· that at the time of the levy the judgment was void for dormancy. Counsel for plaintiff in error requests a review of the two last cited cases, but upon a careful consideration of the principle upon which they rest, we are of the opinion that the cases are correctly decided. The ground of attack upon the judgment in both cases was that it was void upon its face,—an attack which could have been made by the defendant, and for that reason was available to the claimant in the trial of the claim case, and necessarily included within the scope of the judgment rendered in the claim case. *Garlington* v. *Fletcher,* 111 *Ga.* 861.

How stand the various matters now urged by the plaintiff in error as grounds to enjoin the enforcement of the levy after the adjudication that the property levied on is subject to the fi. fa.? The first allegation for equitable interference relates to the amendment changing the judgment de bonis propriis against W. H. Harris, to a judgment de bonis testatoris. This amendment was made before the execution issued. It was apparent upon the face of the proceedings upon which the judgment was predicated, and therefore

the claimant was bound to make his objection in the claim case, or thereafter be estopped from subsequently asserting this ground of invalidity, even if the judgment was improperly amended. The next ground urged for enjoining the levy is that the execution was temporarily withdrawn from the clerk's office pending the claim, and an entry of nulla bona entered thereon. Plaintiff in error can not, after the trial of the claim case, urge the facts alleged with respect to this matter as amounting to an abandonment of the levy; because this entry was upon the fi. fa. at the time of the trial of the claim case, and the legal effect of the entry of nulla bona was necessarily involved in the validity of the process which subjected the property levied on.

The next attack upon the validity of the levy was because it was grossly excessive. If so, it was void. *Brinson* v. *Lassiter,* 81 *Ga.* 40, and cases cited on page 42; *Roser* v. *Georgia Loan Co.,* 118 *Ga.* 181, and cit. This was also involved in the issue which was tried in the claim case, and the plaintiff in error is concluded on this point by that judgment. Another contention why the levy should be enjoined is that the judgment and execution were satisfied, because the plaintiff in the judgment, before the levy, had sued out a process of garnishment against one Brown, and, with full knowledge that Brown was due the defendant in fi. fa. a sum largely in excess of the amount of his judgment, did, for a valuable consideration paid by the defendant in fi. fa., dismiss the garnishment and voluntarily release a debt due by the garnishee to the defendant in fi. fa. which was more than sufficient to satisfy the execution; and that subsequently the garnishee paid the money to the defendant in fi. fa., who, with the consent of the plaintiff in fi. fa., applied it to the payment of other liens against the Harris estate, of inferior dignity. Even if it be conceded that these special facts would amount to an equitable extinguishment of the fi. fa. relatively to the plaintiff in error, he should have insisted on the same in the claim case. The issue there was whether the property levied upon was subject to the fi. fa., and the claimant was bound to urge all of his objections which went to the total extinguishment of the fi. fa. A claimant will not be accorded the privilege of making a second attack, in a subsequent proceeding, upon the validity of the plaintiff's process, because of his failure to set up any defensive equitable right by way of amendment to his claim. "Nothing is better set-

tled than that the judgment of a court of competent jurisdiction is conclusive between the parties as to the matters at issue between them. . . Nor does this rule confine the effect of the judgment to such matters as were in fact pleaded. It is the bounden duty of parties to plead every fact, pro and con., that affects their respective rights, so far as the court has jurisdiction to hear and determine the question which such facts give rise to." *White* v. *Herndon,* 40 *Ga.* 495. The claimant could have made the issue in the claim case that the fi. fa. had been extinguished with respect to him. If the fi. fa. was not operative against him by reason of its payment, or for any other cause, he could have shown and urged such fact in support of his claim. If he omitted to do this, he would nevertheless be concluded by the judgment in the claim case. Thus, it will be seen, every attack upon the validity of the judgment, which the claimant makes in his equitable petition, is concluded by the judgment in the claim case.

2. The petition alleged that inasmuch as the Gano debt was put into judgment after the death of H. C. Harris, it should rank with other debts of equal dignity, and be postponed to debts of higher dignity. It was alleged that the estate of H. C. Harris is insolvent, and that the pro rata share of the Gano judgment would not amount to more than fifty per cent. of the principal and interest. It was prayed that Gano's administrator be enjoined from enforcing his execution, until an accounting with the executor of H. C. Harris could be had, and this amount ascertained before the plaintiff in error could be called on to pay the judgment. The obvious reply to this contention is that Gano, administrator, not only has a judgment against the estate of H. C. Harris, but it has been judicially determined by a court of competent jurisdiction, in a case to which plaintiff in error was a party, that the land levied on is subject to the execution which is sought to be enjoined. As to the plaintiff in error, this judgment is a valid and binding lien on the property against which it is proceeding by levy. We know of no rule of law whereby a claimant who has been concluded by a judgment in a claim case may require an accounting of a defendant in execution who is the executor of an insolvent estate, to ascertain the relative priority of the judgment with the claims of other undisclosed creditors of his testator, and

a reduction, from the face of the judgment, of such amount as may be found from such accounting.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*